UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

Eastern District of Kentucky
F I L E D

NOV 1 5 2013

AT FRANKFORT
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

AMY JERRINE MISCHLER,

        Plaintiff,

                                    Case No. 3:13-cv-26-ART

v.

SUSAN STOKLEY CLARY
In her official and individual capacity as
Kentucky Supreme Court Clerk,

JOHN MINTON
In his official and individual capacity as
Kentucky Supreme Court Chief Justice,

KENTUCKY SUPREME COURT
For declaratory and injunctive relief,

And

LARRIN THOMPSON
In her individual capacity as Supreme
Court Clerk to Justice Will T. Scott.

        Defendants.

## FIRST AMENDED COMPLAINT

### Preliminary Statement

1. This is a suit for damages, injunctive and declaratory relief under 42 U.S.C. § 1983

and the constitutionality of the Kentucky Supreme Court Clerks office both in its statutory

language and it's administration.

2. Defendant Minton is negligently supervising both Defendant Clary and Thompson.

3. This negligent supervision has lead to the Clerk of the Kentucky Supreme Court engaging in Racketeering like actions and denial of civil rights in highest court of Kentucky.

4. Such egregious conduct by the Clerk in the highest court in Kentucky requires federal intervention and supervision in the form of declaratory and injunctive relief to restore the regular administration of justice.

## JURISDICTION AND VENUE

5. This District Court has jurisdiction over this case under 28 U.S.C. § 1331, which provides for original district court jurisdiction over cases presenting federal questions. This case presents federal questions under the Civil Rights Act.

6. Venue is proper pursuant to 28 U.S.C. §1391, because the defendants reside in Kentucky, part of the events that took place occurred in Pike and Frankfort Kentucky.

## PARTIES

7. Plaintiff Amy Jerrine Mischler, (Ms. Mischler) is an adult citizen of Florida, residing at 1120 Palm Court, Okeechobee Florida.

8. Defendant Susan Stokley Clary, (Defendant Clary) is appointed the Kentucky Supreme Court Clerk and only has duties as assigned by the Kentucky Supreme Court.[1] Service in her individual capacity is at her work address of ROOM 209, STATE CAPITOL, 700 CAPITAL AVE. FRANKFORT, KENTUCKY 40601-3488. All actions by employees within the Kentucky Supreme Court Clerks office are imputed to Clary in this suit.

---

[1] One of the issues, is that the duties of the Supreme Court Clerk are not written and made available to the public. So, one assumes that a duty would be to promptly stamped documents filed in the Kentucky Supreme Court, but as will be shown, the Supreme Court Clerks office admits that it does not timely process its mail each day, and thus falsely dating Supreme Court filings. Thus, it unknown whether it is actually the duty of the Supreme Court Clerk to stamp and record documents the day received, a basic function assumed by the public.

9.   Defendant John Minton, (Defendant Minton) is the Chief Justice of the Kentucky Supreme Court.  Service of process in his individual capacity is at his work address of Warren County Justice Center, 1001 Center Street, Suite 305, Bowling Green, KY 42101

10.   Larrin Thompson (Defendant Thompson) is the law clerk of Justice Will T. Scott. Service of process in her individual capacity is at her work address of 126 Trivette Dr, Ste 104, Pikeville, KY 41501.

11.   Defendant Kentucky Supreme Court receives service of process at the Kentucky Attorney Generals Office whose address is 700 Capitol Avenue, Suite 118 Frankfort, Kentucky 40601.

## FACTUAL ALLEGATIONS

### ORIGINAL CRIMINAL AND CIVIL FRAUD: 2002.

12.   In 2002, two circuit court, two circuit court clerks and several attorneys engaged in fraud upon the Court in Pike County Kentucky to benefit a local attorney.

13.   The fraud upon the court was simulated sham legal proceedings with no legal validity to deny the Ms. Mischler domestic violence protection and give the Ms. Mischler's children to an unnamed woman in the fraudulent order.

14.   One of the judges involved in the fraud is Larry Thompson the father of Defendant Larrin Thompson.

15.   The Plaintiff repeatedly notified the Kentucky Administrative Office of the Courts, Director Nemes of the Administrative Office of the Courts, and then Chief Justice Joseph Lambert of the then known irregularities in the said circuit cases.

16.   Those irregularities known at that time was document tampering, missing video record with the Floyd County Judge Julie Paxton acting as circuit court clerk, keeping the video

record in her judicial chambers of which it is now missing. Paxton is the same individual who held hearings in the Pike County cases knowing that she had no jurisdiction.

## RETALITION AND DENIAL OF REDRESS OF GRIEVANCES :2006-2008

17. Ms. Mischler was retaliated against by individuals involved in the fraud upon the court. Paxton ruled in 2006 that Ms. Mischler was a domestic violence offender for exercising free speech by marching in public with a sign. A one sentence felony arrest warrant was issued based on Paxton's order against Ms. Mischler. Two administrative findings of child abuse were based on Paxton's order. After two years of dealing with the retaliation; Ms. Mischler cleared her name of all charges.

18. Later it was discovered that the extensive retaliation was due to the fact that Paxton was never granted jurisdiction in 2002 to Ms. Mischler's cases. Paxton and others could and should have been brought up on criminal charges since the felonies in Kentucky have no statute of limitations.

19. Ms. Mischler was kept under supervised visitation with her children unconstitutionally without any written reason to justify during this time.

## DENIED REDRESS OF GRIEVANCES EXPOSING FRAUD: 2009

20. Ms. Mischler attempted to get redress at the state circuit court level regarding Paxton's lack of jurisdiction. See Exhibit 1. Video exhibit 20.

## DENIED REDRESS OF GRIEVANCES EXPOSING FRAUD: 2010-KENTUCKY SUPREME COURT

21. The Kentucky Court of Appeals refused a simple page extension for her brief on child custody; a page extension necessary to address the multiple frauds that had taken place.

22. On March 29, 2010 Ms. Mischler hand delivered a writ of Mandamus and a writ of Prohibition in the Kentucky Supreme Court about the fraud upon the court including cases 2009-CA-001609-ME, 01-D-00202-001, 02-D-00202-002 and 02-D-00202-003. See Exhibit 1.

23. On March 29, 2010, Ms. Mischler hand delivered a motion to proceed in forma pauperis along with the writ mentioned in paragraph 10. See Exhibit 2.

24. Defendant Minton denied Ms. Mischler access to the Supreme Court of Kentucky stating that Ms. Mischler violated Civil Rule 79.06(6). See Exhibit 3.

25. "*CR 79.06 Clerks of the Court of Appeals and Supreme Court*", states in its entirety that (6) Filing of papers. "*Nothing lodged with the clerk in connection with an original proceeding or an appealed case, or on which action of any kind by the court is sought, shall be docketed or noted as a step in a proceeding unless (a) it is tendered within the time allowed for its filing and otherwise conforms to these rules and (b) the filing fee mentioned in paragraph (3) of this Rule 79.06 has been paid. A late, unauthorized, or otherwise nonconforming paper will be considered only by leave of the court.*"

26. Writs, an original action is not subject to being time barred so CR 79.06(6)(a) does not apply.

27. Thus, Defendant Minton denied Ms. Mischler access to the courts under CR 79.06(6)(b) for failing to pay the fee. However, Ms. Mischler was compliant with CR 79.06(6)(b) because she tendered an in forma pauperis motion, along with the required affidavit under CR 5.05. See Exhibit 2 attached in full.

28. Defendant Clary mailed to Ms. Mischler all copies of the writ and motions so there is no public record of the existence that Ms. Mischler ever filed the writ. See Exhibit 1 and 2.

## DENIAL OF ADMINISTRATIVE REDRESS OF GRIVENACNES
### EXPOSING FRAUD: 2011

29. Ms. Mischler requested Defendant Minton to use his broad administrative authority under the Kentucky Constitution to address the fraud in her cases where Paxton ruled without authority or jurisdiction and gave child custody to an unnamed woman in Paxton's order in 2002.

30. The request was faxed. Defendant Minton never gave notice to Ms. Mischler that he received the fax or that he was aware of the fraud.

## DENIAL OF REDRESS OF GREIVANCES IN THE KENTUCKY
### COURT OF APPEALS: 2012

31. Ms. Mischler, after not receiving a response from Defendant Minton then filed two writs on 02-D-00202-001 and 02-D-00202-002 in the Court of Appeals.

32. The Court of Appeals let the writs sit unanswered and then issued an erroneous factual finding, including falsifying the case numbers. The Court of Appeals tried to make the writs appear based on a single case 02-D-00202 when there were two separate cases 02-D-00202-001 and 02-D-00202-002, of two cases with different factual patterns, filed on different dates.

33. The Court of Appeals made a finding that "Paxton was assigned" to 02-D-00202 when Ms. Mischler specifically alleged with certified court dockets that no such order existed in the case files giving jurisdiction/authority/assignment to Floyd County Julie Paxton in the Pike County case.

## DENIAL OF ACCESS TO COURTS/REDRESS OF GRIEVANCES: 2013
### APPELLANTS BRIEF NOT FILED AND SENT BACK
### TO MS. MISCHLER FOR NO REASON

34. Ms. Mischler appealed the order of 11-CA-1586 to the Kentucky Supreme Court.

35. Anticipating exceeding page limit and needing an enlargement of time to file: Ms. Mischler first filed a motion to exceed page limits and enlargement of time.

35. Fearing that Defendant Clary and Minton would play "games" and try to prevent her from having access to the courts again; Ms. Mischler mooted out the motion in paragraph 35 by timely filing her brief within page limitations. She did sign the brief twice on the cover page, she inadvertently in her rush to be timely filed failed to sign it a third time at the end of the brief.

36. Clary's staff called Ms. Mischler and stated that if she sent a signature page, that the Clerk would add it to the briefs.

37. Ms. Mischler sent the signature pages along with a motion requesting leave from the Court to grant the attachment of the signature page.

38. Clary's staff called Ms. Mischler and asked Ms. Mischler to withdraw the motion as according to them it was not necessary. This was on or about 2/11/2013 with the brief being tendered on 2/4/2013.[2]

39. Clary DID NOT FILE MS. MISCHLERS BRIEF once the signature pages arrived.

40. Despite the motion for page extension and enlargement being mooted out; the Kentucky Supreme Court ruled anyway on the motion.

41. Clary then, WITH NO REASON TO DO SO, mailed all the Appellants Briefs back to Ms. Mischler denying her access to the Court and refusing to file the properly tendered Briefs in 13-sc-30.

42. Ms. Mischler contacted the Kentucky Administrative Office of the Courts on March 19, 2013 to request why her brief was not filed by Clary at the Kentucky Supreme Court in case 13-SC-30.

43. Apparently AOC General Counsel contacted Clary.

---

[2] Ms. Mischler is in Florida thus she immediately sent to the signature pages from Florida to Kentucky, taking a week for the mail to send.

44. Defendant Clary then contacted Ms. Mischler's opposing counsel in 13-sc-30 to obtain a legal reason to justify sending Ms. Mischler's Appellant Brief back to Ms. Mischler. This was March 19, 2013.

45. The opposing counsel then phoned Ms. Mischler, requesting to file the opposing counsels copy of the Appellants Brief on Ms. Mischler's behalf and then Clary making copies. This was March 19, 2013.

46. Ms. Mischler agreed and requested a cover page be sent stamped to verify that the actions took place. However, Ms. Mischler did not receive a copy of what her opposing counsel supposedly filed as the Appellant Brief on Ms. Mischler's behalf.[3]

47. At the end of the day on March 19, 2013; UPS delivered the Appellants brief back to Ms. Mischler who discovered that one of the briefs was disassembled, and scanned to make copies. Therefore, there was no need for Clary to contact Ms. Mischler's opposing counsel to obtain their copy and "legal advice". Clary could have simply made copies from the digital copy made from the disassembled appellant brief.

48. NOTHING in the official record of the Kentucky Supreme Court Clerks record stated what had actually taken place with Ms. Mischler's appellant Brief.

49. See Exhibit 4 from Ms. Mischler's opposing counsel regarding that there was no reason for Clary to send the Appellant brief back to Ms. Mischler.

## DENIAL OF EQUAL PROTECTION AND TREATMENT BY CLARY

50. Nicole Pang, the opposing counsel had a response to a motion due on April 7, 2013.

---

[3] The highest Court in Kentucky actions regarding contacting the opposing counsel is appalling. Ms. Mischler could have simply faxed her own copy to Clary, had Clary requested she do so. These actions are the very appearance of impropriety, since Clary sought legal advice from Ms. Mischler's opposing counsel regarding the filing or lack thereof, of the Appellant Brief.

51. April 7, 2013 is a Sunday so according to the civil rules; Pang had until the end of the following day, Monday April the 8th to file a response and did so.

52. Ms. Mischler had a response to a motion due on Sunday April 21, 2013 and to be treated the same as Ms. Pang; Ms. Mischler had all day Monday April 22, 2013 to file a response.

53. Ms. Mischler's response arrived at the Kentucky Supreme Court Clerks Office on Monday, April 22, 2013.

54. Clary did not file Ms. Mischler's response arriving on Monday April 22, 2013 treating her differently than Pang.

55. Clary had falsely stamped Ms. Mischler's response as received on April 23, 2013 making it "late" so there could be a procedural excuse not to allow the response.

56. Ms. Mischler called and enquired why the online docket did not reflect her response being filed. Ms. Mischler informed Clary that she, Mischler had proof from the United States Postal Service that the response had been delivered on April 22, 2013.

57. Clary then put whiteout on the response and wrote a handwritten 2 over the stamped 3 and sent the cover copies back to Ms. Mischler, as Ms. Mischler had included; a stamped address envelope for such copies. See Exhibit 5.

58. In audio, Clary stated that the Supreme Court Clerks does not open its mail the same day received, in addition to admitting that if Ms. Mischler had not paid extra for tracking from the United States Postal Service that the Clerks would have still falsely filed Ms. Mischler's response as "late on the 23rd" if there was no proof that it had arrived on 22nd. See audio Exhibit 6 entitled April 24, 2013 on the DVD.

## DENIAL OF ACCESS TO THE COURTS:  April 22, 2013

59.   Paragraphs 53 through 58 are reiterated herein.   Clary failed to timely file Ms. Mischler's response received by Clary on April 22, 2013 and falsely stamped it received April 23, 2013 to have reason to deny the response to be filed because it was then "late".   Clary only changed the date when Ms. Mischler stated she had proof of delivery on April 22. 2013.

60.   Falsifying the date of pleadings received is denying Ms. Mischler access to the state courts, equal protection and due process.

## DENIAL OF ACCESS TO THE COURTS:  September 9, 2013

61.   On September 4, 2013, being denied relief at the state circuit court level and the court of appeals to still address the ongoing fraud; Ms. Mischler filed four separate writs to the Kentucky Supreme Court to order the lower courts to answer outstanding motions that have never been heard.   This includes motions filed in late 2012 which the senior judge has not issued an order on.

62.   The United States Postal Service stated on its receipt that the delivery would be on Saturday 9/07/13.   See Exhibit 8.   Ms. Mischler did not have the financial means to place tracking on that envelope along with the other postage.

63.   Clary's office had the filings for case 2013-SC-000648[Writ for answer in 06-F-00438], 2013-SC-000649 [Writ for answer in 02-D-00202-002], 2013-SC-000650 [Writ for answer in 02-D-00202-001] and 2013-SC-000651, [Writ for answer in 02-D-00202-003].

64.   The aforementioned cases were in Clary's office on Monday, September 9, 2013.

65.   Ms. Mischler called on September 11, 2013 to enquire why they had not been posted. Clary told Ms. Mischler they did not exist.   See Exhibit 7, audio recording entitled Capture 1 (9-11-2013 9-38 AM) phone call Kathy Stevens, assistant to the Chief Justice.

66. Ms. Mischler contacted attorney Mark Overstreet representing Chief Justice John Minton in collateral case 13-cv-8 also before this District Court. She faxed a copy of the receipt in Exhibit 8 to Overstreet.

67. Clary held the pleadings she had in her possession on Monday, September 9, 2013 and did not file them until September 13, 2013.

68. Had the pleadings been properly filed when received on September 9, 2013; Nicole Pang, the same opposing counsel who Clary had ex parte communications would not been allowed to file response to deny Ms. Mischler's in forma pauperis motion on September 25, 2013.

70. If the pleadings were properly filed, then last date for Pang to file a response would have been September 22, 2013.

71. Clary's tampering with the filings of the original actions to the Kentucky Supreme Court was to deny Ms. Mischler access to the courts.

## DENIAL OF ACCESS TO THE COURTS: ORDERS NOT TIMELY FILED AND MAILED TO PARTIES TO ALLOW INFLUENCE OF APPOINTMENTS TO MS. MISCHLERS CASES

72. Exhibit 9 is a copy of the envelope from the Kentucky Supreme Court received by Ms. Mischler on September 9, 2013 and pitney bowes stamped September 5, 2013.

73. Within that envelope were three documents included as Exhibit 9, including a July 22, 2013 letter by Deputy Chief Justice Mary Noble, an August 22, 2013 letter from M. Holliday Hopkins, and a State Executive Order filed with the Secretary of State dated August 22, 2013.

74. None of these documents were placed on the online docket maintained by Clary on case 13-SC-30 until September 2013. Ms. Mischler checks the docket daily and did not know about the appointments until she received them in the mail.

75. Clary then backdated the docket in September to act as if they were filed to show the on 7/22/2013 and 8/22/2013, when in fact they were not.

76. The online docket did not reflect the filings of 7/22/2013 and 8/22/2013 UNTIL SEPTEMBER 2013.

77. The reason for the delay is to allow the political networking to compromise the neutrality of the appointments to be biased against Ms. Mischler.[4]

78. Mark Overstreet was contacted by fax on September 9, 2013 to notify Chief Justice Minton of impropriety by Clary. See Exhibit 10.

79. There has been no written response, reprimand, or other correspondence by Chief Justice Minton admitting that Clary was tampering with the filing of the documents in 13-SC-30 and what, if any steps were taken to stop the tampering and to reprimand Clary.

## IMPROPER INFLUENCE ALLOWED BY CLARY TO DENY MS. MISCHLER A IMPARITAL TRIBUNAL

80. Larrin Thompson is the daughter of Pike County Judge Larry Thompson, a litigant in 13-SC-30 before the Kentucky Supreme Court.

81. Larrin Thompson is also the law clerk of Kentucky Supreme Court Justice Will T. Scott. See Exhibit 11.

83. Clary is the supervisor of Larrin Thompson, as Clary has three job titles with the Kentucky Supreme Court. She is the Clerk of the Kentucky Supreme Court, the General

---

[4] A similar occurrence took place in 2006. A Pike County social worker who was personal friends with ex-husband, Jonah Stevens relatives [uncovered due to facebook] placed Ms. Mischler on the child abuser registry in Kentucky, TWICE in October 2006. No due process notice was sent to Ms. Mischler who was living in Jefferson County at the time. The "confidential" information which allows unmonitored access by Kentucky state employees in both the judicial and executive branches was disseminated throughout state government to smear Ms. Mischler reputation. Only in March 2007, when it was put online that Ms. Mischler become aware of it. She demanded a findings letter, issued March 2007 [this was supposed to be sent originally be certified mail] and subsequently got her name cleared of the administrative child abuse findings and won two administrative hearings against Cabinet social workers. HOWEVER, the damage to Ms. Mischler's reputation was already done because the Cabinet refuses to release to her the names of the people allowed to access her confidential information. Ms. Mischler feels that something very similar occurred herein, where the "good old boy" network smeared Ms. Mischler's reputation to the appointments or close associations of theirs.

Counsel to the Supreme Court, and the Court Administrator of the Supreme Court.[5] It is Clary's role as Court Administrator that makes her the supervisor of Larrin Thompson.

84. Defendant Clary and Thompson knew that Ms. Mischler had appeals against Thompson's father in the Court of Appeals in 2011 before Larrin Thompson began working for Clary and Will T. Scott on or about October 2012.

85. ***CREATING AN ABSOLUTE appearance of impropriety*** no steps were taken by Larrin Thompson, Clary, Judge Thompson, Justice Will T. Scott, or Chief Justice John Minton to ensure that Larrin Thompson did not influence the Kentucky Supreme Court justices to favor her father Larry Thompson and deny Ms. Mischler an impartial tribunal.

86. Justice Will T. Scott had a duty to immediately withdraw from 13-SC-30 when it was filed in January 2013 and give notice to Ms. Mischler that his law clerk, Larrin Thompson was the daughter of Judge Larry Thompson, a litigant in 13-SC-30.

87. Ms. Mischler filed a motion asking Justice Scott to withdraw due to other conflicts of interest regarding Real Party of Interest, Jonah Lee Stevens being mentored by Justice Scott upon Stevens graduation from law school and renting and sharing office space with Justice Scott. This motion was filed on January 29, 2013 in 13-SC-30.

89. Justice Scott did not recuse until March 12, 2013 and FAILED to notice Ms. Mischler and the other Justices that his law clerk was the daughter of litigant Larry Thompson.

90. Ms. Mischler only discovered this undisclosed conflict of interest online.

---

[5] There is an inherent conflict of interest with Clary having three distinct roles [three paychecks-General Counsel, Court Administrator, and Clerk to the Kentucky Supreme Court?] at the Kentucky Supreme Court. It is this conflict of interest that has created a clerks office of the highest court in Kentucky that simply not understand its basic function is to timely stamp and file document received. Further, unelected Clary has been in these positions since the 1980's and has as much or perhaps more political power at the Kentucky Supreme Court than even the elected Supreme Court Justices. The Kentucky Constitution Bill of Rights does not allow such great arbitrary and capricious authority to be vested in a single unelected individual.

91. The reason for the delay for Justice Scott to recuse from 13-SC-30 was for Larrin Thompson to influence and bias the other Justices and their staff, through emails, phone calls, lunch meeting, staff meetings against Ms. Mischler and in favor of Larrin Thompsons father, Larry Thompson, a litigant in 13-SC-30.

## HIDING SUPREME COURT ADMINISTRATIVE ORDERS

92. One imputed duty of Clary is filing of administrative orders on the public Administrative Office of the Courts website and to the public.

93. Clary hid from Ms. Mischler and the public two such Supreme Court Administrative Orders that had provisions that violated the Kentucky Constitution.

94. Supreme Court Administrative Orders are issued by the Chief Justice and are required to have an order number.

95. Former Chief Justice Lambert issued an illegal Administrative Order Titled "IN RE: Guidelines for the Senior Status Program for Special Judges". It has no order number and was issued on September 24, 2004. The first page and last page is attached as Exhibit .[6]

96. The order is illegal because it orders senior judges to have undisclosed ex parte communications with circuit court clerks and prior judges to decide "how to proceed" which alters the civil rules of procedure for litigants such as Ms. Mischler assigned multiple senior judges.

97. The order is also illegal because the Chief Justice unilaterally gave himself full authority not found in the Kentucky Revised Statutes to terminate and deny all enhance benefits [up to double retirement] for any arbitrary reason deemed by the Chief Justice. Thus, all senior judges are under duress in politically charged cases such as Ms. Mischler. If the senior judges gave me Ms. Mischler relief, the Chief Justice could simply terminate all the senior judges

---

[6] 13-cv-8, Eastern District of Kentucky Document 6-1.

benefits per the illegal order for simply complying with the order itself requiring the ex parte communication.

98. "In Re: Guidelines for the Senior Status Program For Special Judges" should have been enumerated 2004-6. Clary intentionally did not number the order and did not make it available on the website to public to hide the illegality of the Chief Justice giving himself authority to compromise the integrity of the entire senior judge program.

99. Attached as Exhibit 12 and Exhibit 13 are the Supreme Court Orders filed by date before and after the "In Re: Guidelines for the Senior Status Program For Special Judges".

100. Attached as Exhibit 14 is the online description of the Kentucky Supreme Court Clerks Office. At the end of the second and third page a job abstract of the Kentucky Supreme Court Clerks office is given. See Exhibit 14.Clary is listed as a "reporter" of decisions by the Kentucky Supreme Court and a "compiler" of rule changes of said court.

101. Kentucky Supreme Court Rule SCR 1.040(3)(a) states that "[n]o local rules shall be binding unless in writing, . . . . . and available for general distribution".

102. SCT 1.040(3)(a) is imputed, as according to provisions of the Kentucky Constitution upon the administrative orders as well that "In Re: Guidelines for the Senior Statuts Program for Special Judges" was required by Clary to be made available to the public and was not by Clary hiding the order by failing 1) failing to give a enumerated number to the order and 2) failing to make the order available online with the order administrative orders in 2004.

103. Ms. Mischler, in late 2012 had orders filed in her cases listing authority from a 1983 Administrative Order. See Exhibit 15.

104. Clary did not know that the December 1983 Order existed and was not available at the Supreme Court Clerks Office.

105. The Administrative Order was found in the Kentucky Archives with Clary refusing to give Ms. Mischler a copy of order or making it available online with the other administrative orders.

## MYSTERY PERSON ASSIGNED TO AMY MISCHLER'S CASE

106. According to Supreme Court Deputy Clerk Supervisor Donna Skaggs in Exhibit 7, start at audio 12:28 at there is unknown person "handling the case" whose name that Supervisor Skaggs did not know.

107. Skaggs promised that the mystery person making decisions in Ms. Mischlers cases would call Ms. Mischler. NO call was made to Ms. Mischler and Ms. Mischler has never been informed the name of the unknown person handling her case making decisions on it.

## THE STATUORY PROVISION ESTABLISHING THE DUTIES OF KENTUCKY SUPREME COURT CLERKS OFFICE AND THE ADMINISTRATION OF THAT OFFICE VIOLATES THE UNITED STATES CONSTITUTION AND THE KENTUCKY CONSTITUTION

108. Clary's duties as the Kentucky Supreme Court Clerk are determined by the Chief Justice and subject to change. See KRS 21A.030(1)(3).

109. The Supreme Court does not publish a specification what Clary's duties to the public and it is unknown whether such duties are actually written and compiled for inspection.

110. Section 2 of the Kentucky Constitution prohibits arbitrary and capricious acts by Kentucky Officials and incorporates protections found under the due process and equal protection clauses of the United States Constitution. See Gentry v. Kentucky, NO. 2011-CA-000141-MR in the Kentucky Court of Appeals.

111. The duties of the Kentucky Supreme Court Clerk are not published and subject to change. Citizens cannot be assured of what functions take place when a document is filed in the Kentucky Supreme Court Clerks.

113.    Clary under her undisclosed job duty, denied Ms. Mischler access to the Courts in filing Exhibit 1 and 2, and had D.S. [Donna Skaggs, Deputy Supreme Court Clerk Supervisor] to initial the order to deny allowing Ms. Mischler to file.  See Exhibit 3.

114.    According to Kathy Stevens, the Assistant to Chief Justice Minton who answered the phone for the Clerk of the Kentucky Supreme Court; no supervisor exists in the Kentucky Supreme Court Clerks office although Donna Skaggs receives pay as a supervisor.  See Exhibit 16 and listen to Exhibit 7.

112.    Deputy Supreme Court Clerk Supervisor Donna Skaggs not only initialed a document on behalf of Chief Justice Minton in Exhibit 3, which is falsified;  Donna Skaggs is the same individual who thinks that the Supreme Court Clerk does not have to stamp pleadings the same day received.  See Exhibit 3 and 6.

113.    In short, the Kentucky Supreme Court Clerks office thinks that it has the authority to deny citizens to file with the Kentucky Supreme Court [Exhibit 1 and 2], that it does not have to stamp documents the same day received [Exhibit 7], that it can backdate documents [Exhibit 5], that it can discriminate and treat differently litigants [Exhibit 7], fail to timely file documents [Exhibit 9], fail to make public administrative orders [Exhibit 11, 15],  return briefs for no legal reason to parties [Exhibit 4], falsely tell litigants that there is no supervisor in the clerks office [Exhibit 7, 16], falsify date of pleadings filed later than actually received it[Exhibit 7, 8, 9, 10], allow known conflict of interest between employees and litigants without noticing the record of the conflict or that the justices and other clerks could be biased [Exhibit 11, paragraphs 80 through 91], states that only mail considered timely received by the Clerk express or registered with the post office [Exhibit 7, at 10:06 audio], seek legal advice from an opposing party regarding litigation that the opposing party is litigating [Exhibit 4].

114. Further, an unknown person in the Clerks office whose name the Deputy Clerk Supervisor does not know is making decisions on Ms. Mischler's case. See Exhibit 7, at 12:28.

## CLAIMS FOR RELIEF

### I. First Cause of Action: KRS 21A.030(1)(3) violates the United States Constitution and the Kentucky Constitution

115. The Kentucky Supreme Court Clerks duties under KRS 21A.030(1) and (3) violate the Kentucky Constitution Section II.

116. There is no public notice what these duties are and no order stating what they are.

117. The public assumes that one of the duties of Kentucky Supreme Court Clerk Susan Stokley Clary is to properly stamp pleadings as received by litigants to the Kentucky Supreme Court.

118. Incorporating paragraphs 12 through 114, specifically paragraphs 21 through 28, 39 through 47, 50 through 71, repeatedly the Kentucky Supreme Court Clerk failed to file, stamp, date, process pleadings from Ms. Mischler.

119. The Kentucky Supreme Court Clerk's office arbitrarily and capricious decides what date to place on pleadings. Including a statement from Deputy Clerk Supervisor Donna Skaggs that only priority and registered mail with the United States Post Office is considered timely, and that First Class Postage mail is treated differently.

120. There is no civil rule that allows the Clerk office to treat First Class Postage mail differently than priority or registered mail.

121. For proper administration, there must be specific duties and expectations on the duties that the Kentucky Supreme Court Clerk made available to the public.

122. Another example, nowhere in the civil rules, published administrative orders, or other public materials does it state that individuals are assigned to cases within the Kentucky Supreme Court.

123. According to Deputy Supervisor Donna Skaggs, there is a mystery person, whose name she does not know making decisions on Ms. Mischler's case.

123. KRS 21A.030(1) and (3) are void for vagueness and thus unconstitutional because the public has no knowledge on what or how the Kentucky Supreme Court Clerk duties actually are and how those duties are to take place.

124. KRS 21A.030(1) and (3) violates Kentucky Constitution Section II, because the duties are arbitrary and capricious with no public knowledge of what those duties are.

125. KRS 21A.030(1) and (3) violates the United States Constitution Fourteen Amendment. There is no public knowledge what the due process procedures are to take place at the Kentucky Supreme Court Clerks office and whether Ms. Mischler pleadings are supposed to be stamped the same day as they were received, AS ANY REASONABLE PERSON WOULD ASSUME.

126. KRS 21A.030(1) and (3) violates the United States Constitution Fourteenth Amendment equal protection clause. Defendant Clary treated identically situation responses from Ms. Mischler and her opposing counsel Pang differently. There is no public notice if that the unpublished duties permit the Clary from differential treatment, or whether this action was taken by Clary to violate her duties.

## II. Second Cause of Action: Kentucky Supreme Court violates the United States Constitution Fourteenth Amendment due process clause by not making public all Administrative Orders

127. Like local federal rules; the Kentucky Supreme Court issues administrative orders changing the civil rules of procedure.

128. Unlike the local federal rules; the Kentucky Supreme Court publishes some not all administrative orders online and does so in a disorganized fashion one order on a separate pdf, making searching to verify what the current rules in effect are very difficult.

129. Ms. Mischler was assigned senior judges to several of her cases. BUT because Clary did not give an order number or file online administrative order "*In Re:  Guidelines for the Senior Statuts Program for Special Judges*"; Ms. Mischler due process rights were violated because she was denied knowledge that this administrative order actually changed the existing civil rules of procedure where these judges were assigned, including undisclosed ex parte communications between the senior judges, clerks, and former judges to decide "how to proceed" in her case.

130. There can be no due process and equal protection of law in the state courts when there are "secret rules" not made available to litigants that apply to those litigants, how their cases are administered.

## III.  Third and Fourth cause of Action:  Denial to Access to Courts, Denial of Redress of Grievances

131. Under color of law, Defendant Clary as negligently supervised by Defendant Minton denied Ms. Mischler her first Amendment Right to Redress Grievances and 14th Amendment right to have access to the Courts by refusing to file Ms. Mischler pleadings, refusing to place the right date on Ms. Mischler's pleadings, seeking legal advice from Ms.

Mischler's opposing counsel, and obstructing Ms. Mischler's by misrepresenting that there was a mystery unknown person making decisions on Ms. Mischler's pleadings.

## IV. Fifth cause of Action: Denial of Access to Courts

132. Under color of law, Defendant Clary hired Larrin Thompson, the daughter of Larry Thompson as the law clerk for Justice Will T. Scott.

133. Defendants Clary and Thompson fully well knowing that Justice Scott had a conflict of interest in 13-SC-30 due to Larrin Thompsons father being a party; under color of law, Clary allowed and permitted Larrin Thompson to email, converse, and communicate with the Kentucky Supreme Court Justices and their law clerks concerning her father Larry Thompson destroying the integrity of the Kentucky Supreme Court and violating Ms. Mischler's right to impartial tribunal in 13-SC-30.

134. In Justice Scotts withdrawal, neither nor did Larrin Thompson or Clary made any public notice that Larry Thompsons daughter was clerking for Justice Scott and had numerous interactions with the Kentucky Supreme Court Justices through face to face meetings, emails, phone conversations, and other contacts. There is no notice in 13-SC-30 that the appearance of impropriety of the entire Kentucky Supreme Court was tainted by Larrin Thompsons and Clary's actions.

## V. Sixth Cause of Action: FRAUD

135. Kentucky Supreme Court Rule SCR 1.040(1) specifically states that "[n]o judge shall conduct any judicial proceeding, other than the issuance of warrants, outside his own circuit or district unless designated by the chief justice or by the chief judge of an administrative region".

136. Exhibit 1, a writ Ms. Mischler attempted to file at the Kentucky Supreme Court specifically outlines a factual basis that Floyd County Judge Julie Paxton violated SCR 1.040(1) to rule without authorization or jurisdiction in Pike County cases 02-D-00202-001, 02-D-00202-002, and 01-CI-1197 and deny Ms. Mischler her civil rights including equal protection, due process, and her parental rights.

137. Exhibit 1 also outlined how Ms. Mischler had repeatedly sought legal redress at the Court of Appeals and Circuit Court levels and had been denied to cover up the violation of the Supreme Court Rules by Paxton who also conspired with other judges and attorneys to harm Ms. Mischler.

138. Exhibit 1 also shows how Ms. Mischler was falsely arrested to cover up Paxton's conspiracy with others to violate SCR 1.040(1).

139. Defendants Clary and Minton to cover up the judicial and misconduct in the Kentucky Courts, committed fraud against Ms. Mischler making a material representation that Ms. Mischler's pleading was denied by Civil Rule 79.06(6), refusing to give a case number or public notice of the filing. The material representation that the pleading was denied by civil Rule 79.06(6) was false, and Clary and Minton knew it to be false because Ms. Mischler tendered a motion to proceed in forma pauperis. The false representation was made to lead Ms. Mischler to believe that there were no redress for her grievances with the Kentucky Supreme Court, and Ms. Mischler acted in reliance that there was no redress for her grievances with the Kentucky Supreme Court. The acts of Clary and Minton caused Ms. Mischler injury in her health, emotions, her civil rights, and her parental rights making her a subclass Kentucky citizen without equal protection under the state laws of Kentucky.

## VI. Seventh Cause of Action: Outrage

140. Multiple and repeated layers of outrage took place.

141. Clary and Minton falsely stated that Ms. Mischler could not get relief in the Kentucky Supreme Court with a writ of mandamus and sent it back to her knowing she had complied with CR 79.060(6) by tendering an informa pauperis motion with affidavit.

142. Clary and Minton's conduct denying Ms. Mischler access to the Kentucky Supreme Court is outrageous and intolerable and offends accepted standard of decency because they swore oaths of office to uphold both the Kentucky and United States Constitution.

143. Clary and Minton's conduct caused Ms. Mischler extreme emotional distress directly related to the denying of access to redress of grievances of the fraud in the circuit cases of 02-D-00202-001, 02-D-00202-001, 02-D-002020-003, 01-CI-1197, and that emotional distress was severe and still ongoing.

144. Clary and Larrin Thompson knew that Ms. Mischler had court case against Larry Thompson the father of Larrin Thompson.

145. Clary allowed Larrin Thompson to have access to the law clerks and Justices of the Kentucky Supreme Court through Larrin Thompsons employment as law clerk to Justice Will T. Scott, as supervised by Clary.

146. Larrin Thompson conversed, emailed, communicated, had meetings with the law clerks and Justices of the Kentucky Supreme Court which biased the entire Kentucky Supreme Court against Ms. Mischler in Larrin Thompsons fathers favor. Such conduct that Clary and Larrin Thompson did to impugn the integrity of the Kentucky Supreme Court is outrageous and intolerable and offends the accepted standards of decency and morality that the Kentucky Supreme Court and its employees are to be held to the highest standard of ethical behavior.

147. Clary and Larrin Thompsons actions to taint and bias the Kentucky Supreme Court against Ms. Mischler in favor of Larry Thompson caused and still cause Ms. Mischler extreme emotional distress and that distress is severe.

148. Clary with no legal reason conspired with Ms. Mischler's opposing legal counsel to obtain a legal reason to send Ms. Mischler's appellant brief back to Ms. Mischler. Clary did so. Clary's actions to send a properly filed Appellant Brief back to the Appellant is outrageous and intolerable and offends the general accepted standards that the Kentucky Supreme Court Clerk's office functions without bias.

149. Clary's action sending the Appellant Brief for no legal reason to Ms. Mischler caused Ms. Mischler severe emotional distress and such distress is ongoing because Ms. Mischler is not assured that her brief, supposedly accurately copied by Clary from opposing counsel is really Ms. Mischler's Appellant Brief.

150. Clary intentionally failed to open her mail and then stamped the wrong date on Ms. Mischler's response. Clary then backdated the response when confronted that Ms. Mischler had evidence that the response arrived early by the United States Postal Service. Clary's actions that the Kentucky Supreme Court does not timely open it's mail and does not date the accurate date of receipt on its mail offends the general accepted standards of decency and morality where the public expects the Kentucky Supreme Court Clerk to open all mail daily and accurately stamp the correct date of receipt.

151. Clary's action to attempt to deny Ms. Mischler access to the courts by stamping a false date on her response to make it "late" caused Ms. Mischler extreme emotional distress that is severe.

## DEMAND FOR RELIEF

WHEREFORE, Ms. Mischler requests that this District Court

152. Declare that KRS 21A.030(3) is unconstitutional and written duties of the Kentucky Supreme Court Clerk must be written and made available to the public for inspection to ensure the proper functioning of the Kentucky Supreme Court Clerk's Office;

153. Declare that all current Administrative Orders by the Kentucky Supreme Court must be put in a single PDF searchable and made available to the public for inspection to ensure the proper administration of justice in the Kentucky State Courts;

154. Issue an injunction against the entity the Kentucky Supreme Court to answer to this District Federal Court concerning the malfeasant actions of Kentucky Supreme Court Clerks office including failing in the most basic task of daily opening mail and stamping the correct date on pleadings filed at the Kentucky Supreme Court;

155. Issue a factual finding Declaration that the Kentucky Supreme Court Clerks office, as it is operating now is unconstitutional in violation of the 14th Amendment Due Process and Equal Protection Clause of the United States Constitution;

156. Issue an injunction against the entity the Kentucky Supreme Court to create a corrective action plan to restore citizens Constitutional rights to the Kentucky Supreme Court Clerks office that must be approved by this District Court;

157. Issue an injunction against the entity the Kentucky Supreme Court that all conflicts of interest between Justices, law clerks, and other employees must be declared upon the court record in all cases before the Kentucky Supreme Court;

158. Declare that Clary, Minton, and Larrin Thompson violated Ms. Mischler's First Amendment Right to Redress of Grievances, 14th Amendment Due Process Rights, 14th Amendment Equal Protection rights and Ms. Mischler's right to have access to the state courts;

159. Declare that Clary, Minton, and Larrin Thompson committed the common law torts of fraud and outrage.

160. Award Ms. Mischler damages for the harm the Defendants committed against her;

161. Award Ms. Mischler costs, including reasonable fees pursuant to 42 U.S.C. 1988;

162. Grant any and all additional relief to which Ms. Mischler may be entitled.

163. A jury trial for damages is requested and a bench trial for all determining factual basis.

Respectfully submitted,

Amy J. Mischler
1120 Palm Court
Okeechobee, Florida 34974
863-763-6213
ajmischler@yahoo.com

11/12/13