UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT FRANKFORT

AMY JERRINE MISCHLER,        )
                                     )
               Plaintiff,        )
                                     )
v.                                   )     No. 3:13-CV-26
                                   )
SUSAN STOKLEY CLARY, *et al.*,  )
                                   )
           Defendants.     )

## MEMORANDUM OPINION

This civil action is pending before the Court on defendants' motion to dismiss [Doc. 42] and plaintiff's motion to strike [Doc. 49]. Plaintiff has filed an objection, a supporting memorandum, and exhibits in response to the motion to dismiss [Doc. 51] and the defendants have replied [Doc. 52]. Plaintiff has also filed a notice of objection [Doc. 57] to issues raised in the defendants' reply that were not found in her response. The defendants have responded to the plaintiff's motion to strike [Doc. 50]. Thus, the pending motions are ripe for determination.

For the reasons set forth herein, the plaintiff's motion to strike [Doc. 49] will be **DENIED** and defendant's motion to dismiss [Doc. 42] will be **GRANTED**.

## I.    Procedural History

Plaintiff Amy Mischler filed this case on May 13, 2013 [Doc. 1], initially only asserting claims against defendant Susan Stokley Clary in her official capacity as the

Kentucky Supreme Court Clerk. The original complaint was never served on defendant Clary. On November 15, 2013, plaintiff filed a first amended complaint [Doc. 12] which asserted additional claims and added Kentucky Supreme Court Chief Justice John Minton, the Kentucky Supreme Court, and Larrin Thompson, former law clerk to Kentucky Supreme Court Justice Will T. Scott, as defendants. This complaint was not served on the defendants. On December 20, 2013, then-presiding District Judge Thapar consolidated this case with another civil action pending in this Court, case number 7:13-cv-8, *Mischler v. Stevens, et al.*, [Doc. 19]. Still, defendants Clary, Larrin Thompson, and the Kentucky Supreme Court were never served with process and therefore did not appear in the consolidated action.

On April 8, 2014, the undersigned entered a memorandum opinion and order in the consolidated case granting various motions to dismiss and dismissing all of the defendants except for Jonah Stevens, Clary, Larrin Thompson, and the Kentucky Supreme Court [Case No. 7:13-cv-8, Docs. 118, 119]. That decision was affirmed by the Sixth Circuit Court of Appeals on September 9, 2015 [Case No. 7:13-cv-8, Doc. 147]. The undersigned then severed cases 7:13-cv-8, with defendant Jonah Stevens the sole remaining defendant in that case, and 3:13-cv-26, with defendants Clary, Larrin Thompson, and the Kentucky Supreme Court as the remaining, unserved defendants in this case [Doc. 23]. After failing to comply with this Court's directive to file a complete, amended and restated complaint against only these remaining defendants, the Court directed this case to proceed on the previously filed First Amended Complaint [Doc. 28].

2

The defendants have been served and now move to dismiss the First Amended Complaint in its entirety.

## II.    Relevant Facts

Much has been written by this Court and others on the long-running legal battles of the plaintiff against her ex-husband, Jonah Stevens, concerning custody of their two children, and the manner in which the Kentucky judicial system has handled those battles.   It will not be repeated here.   The instant case has its genesis in plaintiff's attempts to challenge the decisions of the Pike County Circuit Court in 2002, which denied cross domestic violence petitions, and in 2006, which granted temporary custody of the two children to Mr. Stevens.   In 2009, Mr. Stevens was awarded permanent and full custody.   Notably, Ms. Mischler did not directly appeal any of those decisions.

The instant case challenges the manner in which the Kentucky Supreme Court has handled Ms. Mischler's various writ petitions which attempted to collaterally attack the domestic relations orders.   The First Amended Complaint challenges the way in which the Kentucky Supreme Court Clerk's office handled her petitions, when pleadings are stamp-filed, who is permitted to work on her cases, whether the Kentucky Supreme Court's administrative orders should be available online, and the lack of a published list of duties for the Kentucky Supreme Court Clerk.   Plaintiff seeks damages, injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 [Doc. 12 at ¶ 1].

## III.    Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is proper when a federal court lacks subject matter jurisdiction.  When subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing jurisdiction to survive a motion to dismiss.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  Under Rule 12(b)(1), a motion to dismiss "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).  A facial attack on the subject matter jurisdiction alleged in a complaint challenges the sufficiency of the pleading.  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  In reviewing a facial attack, the court takes the plaintiff's allegations in the complaint as true, similar to a Rule

12(b)(6) motion to dismiss.  *Id.*   A party making a factual attack on subject matter jurisdiction challenges the actual existence of the court's jurisdiction – a defect that may exist even though the complaint contains the formal allegations necessary to invoke jurisdiction.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).   With a factual attack, no presumption of truthfulness applies to the allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

## IV.   Plaintiff's Motion to Strike

Plaintiff filed a motion to strike [Doc. 49] the defendants' motion to dismiss, arguing that the motion to dismiss is longer than her complaint, that it is full of extraneous material, and that it is really a motion for summary judgment.  Defendants have responded in opposition to the motion to strike [Doc. 50], arguing that their supporting memorandum complies with the page limitations in LR7.1(d), that the length of their brief was necessary to respond to the lengthy First Amended Complaint, and that references to public records from plaintiff's prior cases are necessary to understanding the factual allegations and defenses.  Moreover, defendants point out that the Court may consider public records in support of a motion to dismiss without converting the motion to a motion for summary judgment and that Fed. R. Civ. P. 12(d) specifically contemplates the conversion of a motion to dismiss to a motion for summary judgment when matters outside the pleadings are considered.

Fed. R. Civ. P. 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 7(a) defines a "pleading" as:

    (1)    a complaint;

    (2)    an answer to a complaint;

    (3)    an answer to a counterclaim designated as a counterclaim;

    (4)    an answer to a crossclaim;

    (5)    a third-party complaint;

    (6)    an answer to a third-party complaint; and

    (7)    if the court orders one, a reply to an answer.

Fed. R. Civ. P. 7(a).  The rule notes that "[o]nly these pleadings are allowed." *Id*.  Thus, Defendants' motion is not a "pleading" subject to Rule 12(f).  *See Rouse v. Caruso*, No. 06-CV-10961-DT, 2007 WL 209920, at *2 (E.D. Mich. Jan. 24, 2007) ("neither defendants' motions nor responses to motions constitute 'pleadings' subject to Rule 12(f)"); *Guthrie v. Ball*, No. 1:11-cv-333-SKL, 2014 WL 5089849, at *4 (E.D. Tenn. Oct. 9, 2014) (J. Lee).  Plaintiff's motion to strike a motion to dismiss is therefore not one permitted by Rule 12(f).  Moreover, plaintiff's arguments are more appropriately directed to the merits of defendant's motion, which will be addressed *infra*.  Accordingly, plaintiff's motion to strike [Doc. 49] will be **DENIED**.

## V.      Constitutionality of KRS 21A.030

Count I of the First Amended Complaint alleges that Ky. Rev. Stat. Ann. §§ 21A.030(1) and (3) violate the United States and Kentucky Constitutions because they do not specifically describe the Kentucky Supreme Court Clerk's duties as to filing, stamping, and processing pleadings, that they are void for vagueness, and violate due process and equal protection [Doc. 12 at ¶¶ 115—126].  In short, plaintiff claims that the lack of a more specific job description for the Kentucky Supreme Court Clerk, one that defines how pleadings should be stamp filed, is a violation of her due process and equal protection rights.  This claim is without merit.

Ky. Rev. Stat. Ann. § 21A.030(1) provides that "[t]he clerk of the Supreme Court shall be appointed by the court to serve at its pleasure.  The annual salary of the clerk shall be fixed by the General Assembly."  Section 21A.030(3) provides that "[t]he clerk shall perform such duties as the Supreme Court may assign, and shall be bonded to the Commonwealth, for faithful performance of duty, in such manner and in such amount as the Supreme Court shall determine."

The test for determining whether an enactment is void for vagueness is whether the provision gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Grayned v. City of Rockford,* 408 U.S. 104, 108-09 (1972). The Supreme Court has noted that "[t]he degree of vagueness that the Constitution tolerates— as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment ..." and the Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of

imprecision are qualitatively less severe." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498—99 (1982). Neither of the Kentucky statutes at issue prohibit or regulate anything; they provide some of the general outlines of the position of the Clerk of the Kentucky Supreme Court. Plaintiff cites no authority, nor has the Court found any, to support her claim that the failure of the Kentucky legislature to more specifically describe the job duties of the Kentucky Supreme Court Clerk is somehow detrimental to her. Moreover, as defendants point out, Kentucky CR 76.40(2) [1] defines "timely filing" in the Kentucky Court of Appeals and the Kentucky Supreme Court and there is no requirement for such specificity to be duplicated in the Kentucky statutes. Finally, plaintiff's equal protection claim fails as a matter of law because she has not pled that she is a member of a protected class and that she was treated disparately as a result of her membership in the class. *Jones v. Union Cty.*, 296 F.3d 417, 426 (6th Cir. 2002). Count I will be dismissed.

## VI.   Claims Against the Kentucky Supreme Court

As best as can be discerned, only Count II of the First Amended Complaint contains claims against the Kentucky Supreme Court [Doc. 12 at ¶¶ 127—130]. Plaintiff complains that the Kentucky Supreme Court publishes some, but not all, of its

---

[1] Ky. CR 76.40(2) states: "To be timely filed, a document must be received by the Clerk of the Supreme Court of the Clerk of the Court of Appeals within the time specified for filing, except that any document shall be deemed timely filed if it has been transmitted by United States registered (not certified) or express mail, or by other recognized mail carriers, with the date the transmitting agency received said document from the sender noted by the transmitting agency on the outside of the container used for transmitting, within the time allowed for filing."

administrative orders online and they are therefore difficult to search [*Id.* at ¶ 128]. Plaintiff complains that senior judges were assigned to several of her prior cases but she was unaware of an administrative order governing the assignment of senior judges [*Id.* at ¶ 129]. Thus, plaintiff claims she was denied due process and equal protection because of secret rules not available to litigants which govern how their cases are administered [*Id.* at ¶ 130].

Among its many defenses, the defendants argue that the Kentucky Supreme Court, as an arm of the State of Kentucky, is entitled to Eleventh Amendment immunity from suit [Doc. 42-1 at pp. 23—24]. Plaintiff's response seems to be that, because she has asserted a due process and equal protection claim, Eleventh Amendment immunity does not apply and further does not bar her claims for injunctive or declaratory relief [Doc. 51-1 at pp. 45—47]. She is mistaken.

It is well settled that the Eleventh Amendment bars suit against a state or one of its agencies in federal court without its consent, waiver, or by act of Congress to abrogate that immunity. *See Han v. Louisiana*, 134 U.S.1 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *Salt Lick Bancorp v. F.D.I.C.*, 187 F. App'x 428, 442—43 (6th Cir. 2006). This immunity applies to agencies and/or subdivisions of a state that are an "arm of the state." *Ernst v. Rising*, 427 F.3d 351, 358—59 (6th Cir. 2005). The Kentucky Supreme Court is "unquestionably an arm of the state for purposes of the Eleventh Amendment, and is thus immune from suit under the Eleventh Amendment." *Anglin v. Kentucky Supreme Court*, No. 3:13-33-GFVT, 2013 WL 6253159, at *2 (E.D. Ky. Dec. 3, 2013). It is also well settled that § 1983 does not

abrogate that immunity. *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979) (§1983 does not "override the traditional sovereign immunity of the States")); *Howlett by and through Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal or state court").

Moreover, the Eleventh Amendment prohibits *all* suits, whether for injunctive, declaratory, or monetary relief against the State. *Thiokol v. Dep't of Revenue*, 987 F.2d 376, 381 (6th Cir. 1993). Plaintiff's belated attempt to characterize her claims as arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201—2202, which is not mentioned in the First Amended Complaint, does not change this result. "The Declaratory Judgment Act ... does not explicitly authorize suits against states and therefore cannot be used to circumvent the Eleventh Amendment." *George-Khouri Family Ltd. P'ship v. Ohio Dep't of Liquor Control*, No. 04-3782, 2005 WL 1285677, at *2 (6th Cir. May 26, 2005) (quoting *United States v. South Carolina,* 445 F. Supp. 1094, 1099 (D.S.C. 1977)); *see also Heydon v. MediaOne of Southeast Mich., Inc.,* 327 F.3d 466, 470 (6th Cir. 2003) ("The Declaratory Judgment Act does not create an independent basis for federal subject matter jurisdiction. The Act only provides courts with discretion to fashion a remedy. Thus, before invoking the Act, the court must have jurisdiction already.") (citations omitted). Accordingly, the Kentucky Supreme Court is entitled to absolute immunity from suit pursuant to the Eleventh Amendment.

In addition, the First Amended Complaint fails to state a claim upon which relief against the Kentucky Supreme Court can be granted because the Kentucky Supreme Court is not a person within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). All claims against the Kentucky Supreme Court will be dismissed.

## VII.   Claims Against Larrin Thompson

Counts V and VII appear to be the only claims against defendant Larrin Thompson. Ms. Thompson is sued in her individual capacity as the now-former law clerk to former Kentucky Supreme Court Justice Will T. Scott [Doc. 12 at ¶ 10]. Ms. Thompson is the daughter of Pike County Family Court Judge Larry Thompson, who recused from handling any of the domestic violence petitions of plaintiff and her ex-husband and who was a defendant in the consolidated action in this court, case number 7:13-cv-8 [*Id.* at ¶ 80]. Ms. Thompson clerked for Justice Scott during the time one of Ms. Mischler's former cases, 2013-SC-30,[2] was pending in the Kentucky Supreme Court [*Id.* at ¶ 81]. Because Judge Thompson was a defendant in case 2013-SC-30, plaintiff alleges that Justice Scott had a conflict of interest regarding her case and he should have immediately recused, but did not do so for approximately two months [*Id.* at ¶¶ 86—89].

Plaintiff alleges that Ms. Thompson was permitted to email, converse, and communicate with the Kentucky Supreme Court Justices and their law clerks concerning her father, a party in a pending case, thus "destroying the integrity of the Kentucky

---

[2]The decision in this appeal is reported at *Mischler v. Thompson*, 436 S.W.3d 498 (Ky. 2014).

Supreme Court and violating Ms. Mischler's right to impartial [*sic*] tribunal" [Doc. 12 at ¶ 133]. Plaintiff further complains that there was no public notice that Ms. Thompson was clerking for Justice Scott or that "the appearance of impropriety of the entire Kentucky Supreme Court was tainted" by these actions [*Id.* at ¶ 134]. Thus, plaintiff alleges that Ms. Thompson, in association with Ms. Clary, denied her access to the courts [*Id.* at ¶¶ 132—134] and committed the tort of outrage, causing plaintiff extreme and severe emotional distress [*Id.* at ¶¶ 140—151].

All of the allegations against Ms. Thompson concern her duties as a judicial law clerk and she is therefore entitled to absolute immunity from damages claims as to those duties. *See Young v. Boyle*, 849 F.2d 610, 1988 WL 62397, at *2 (6th Cir. June 21, 1988) (judicial immunity "extends to non-judges who perform judicial functions … and specifically to a judge's law clerks"); *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988) ("for purposes of absolute judicial immunity, judges and their law clerks are as one"). In response, plaintiff argues that, because Justice Scott recused from case 2013-SC-30, Ms. Thompson was no longer acting in a law clerk capacity at the time she was allegedly influencing the Kentucky Supreme Court Clerk's office in mishandling plaintiff's case and therefore Ms. Thompson is not entitled to quasi-judicial immunity [Doc. 51-1 at pp. 32—33]. However, plaintiff cites no applicable authority in support of her argument and ignores controlling authority that judicial immunity is lost only for nonjudicial actions or when judicial actions are taken in the absence of subject matter jurisdiction. *See Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001); *Stump v. Sparkman*, 435 U.S. 349, 356—57 (1978) (a judge will be deprived of immunity "only when he has acted in the clear

12

absence of all jurisdiction"); *Da Vang v. Hoover*, 478 F. App'x 326, 327 (7th Cir. 2012) (same). Ms. Thompson was clearly performing judicial actions in her role as Justice Scott's law clerk and the Kentucky Supreme Court had subject matter jurisdiction over plaintiff's case. Accordingly, Ms. Thompson is entitled to immunity from suit and the claims against her will be dismissed.

## VIII.  Claims Against Susan Stokley Clary

Most of the claims and much of plaintiff's ire is directed at defendant Susan Stokley Clary who is sued in her individual and official capacities as the Kentucky Supreme Court Clerk [Doc. 12 at ¶ 8]. Plaintiff complains that a writ of mandamus and a writ of prohibition delivered to the Kentucky Supreme Court on March 29, 2010, were returned to her by Ms. Clary for failure to comply with Kentucky Rule of Civil Procedure 79.06 [*Id.* at ¶¶ 22—28]. Plaintiff complains about the way her brief in 2013-SC-30 was handled by Ms. Clary's office, primarily that it was inadvertently returned to her for her admitted failure to sign the last page [*Id.* at ¶¶ 34—49]. Plaintiff complains about when her submissions to the Kentucky Supreme Court were stamped as filed [*Id.* at ¶¶ 50—79]. Plaintiff complains that Ms. Clary "hid" two administrative orders from her and the public by not posting them on the Kentucky Administrative Office of the Courts' website, that a "mystery person" is making decisions on plaintiff's cases in the Kentucky Supreme Court, and that Ms. Clary's duties as the Kentucky Supreme Court Clerk are not published [*Id.* at ¶¶ 92—114]. These allegations form the basis of plaintiff's third through seventh causes of action [*Id.* at ¶¶ 131—151].

As with the claims against Ms. Thompson, all of the claims against Ms. Clary concern her duties as the Kentucky Supreme Court Clerk and she is entitled to absolute immunity from damages claims as to those duties. *Lyle v. Jackson*, 49 F. App'x 492, 494 (6th Cir. 2001) (two court clerks who failed to provide plaintiff with copies of filings were entitled to quasi-judicial immunity); *Harris v. Suter*, 3 F. App'x 365, 366 (6th Cir. 2001) (U.S. Supreme Court Clerk's refusal to file a petition for certiorari for failure to comply with the court rules was a quasi-judicial function entitling the clerk to absolute immunity); *Arwood v. Aldred*, No. 6:15-CV-70-KKC, 2015 WL 2065760, at *5 (E.D. Ky. May 4, 2015) (quasi-judicial immunity "extends to persons performing tasks which are so integral or intertwined with the judicial process that the persons are considered an arm of the judicial officer who is immune" such as court clerks). In response, plaintiff contends that Ms. Clary's actions were administrative rather than judicial and she is not entitled to quasi-judicial immunity [Doc. 51-1 at pp. 33—35]. However, plaintiff's reliance on authority concerning members of an executive branch agency, *Flying Dog Brewery, LLLP v. Michigan Liquor Control Comm'n*, 597 F. App'x 342 (6th Cir. 2015), is misplaced. There can be no question that Ms. Clary, as the Kentucky Supreme Court Clerk, is a member of the judicial branch and is entitled to quasi-judicial immunity in that capacity. Accordingly, Ms. Clary is entitled to absolute immunity as to the individual-capacity claims against her.

In addition, the official capacity claims against Ms. Clary fail to state a claim upon which relief can be granted. It is well settled that a suit against a state official in her official capacity is a suit against the official's office and is no different from a suit against

the State itself.  *Will*, 491 U.S. at 71.  Thus, in her official capacity, Ms. Clary is not a "person" subject to suit under § 1983, *Id*., and those claims against her will be dismissed.

## IX.    Statute of Limitations

It is well settled that § 1983 claims arising in Kentucky are subject to a one-year statute of limitations.  *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).  This case was filed on May 13, 2013; thus, any complained-of actions occurring before May 13, 2012 are time-barred.

## X.    Conclusion

For all of the foregoing reasons, the defendants' motion to dismiss [Doc. 42] will be **GRANTED**, plaintiff's motion to strike [Doc. 49] will be **DENIED**, and this case will be **DISMISSED**.  An appropriate order will be entered.

       s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE